UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LUIS GERMAN LEMA TAMAY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 2:25-cv-00438-JAW |
| | ) |
| RODNEY S. SCOTT, et al., | ) |
| | ) |
| Respondents. | ) |

**ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER**

The court issues a temporary restraining order, restraining the respondents from transferring the petitioner outside the state of Maine pending further order of the court.

**I.   BACKGROUND**[1]

On September 2, 2025, Luis German Lema Tamay filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pet. for Writ of Habeas Corpus* (ECF No. 1) (*Pet.*). Mr. Tamay is currently detained in Fort Fairfield, Maine. *Id.* ¶ 10. The Petitioner is an Ecuadorian national who has been in the United States since April of 2019, more than two years. *Id.* ¶¶ 1, 2. Mr. Tamay alleges, on information and belief, that Department of Homeland Security (DHS) intends to initiate Expedited Removal proceedings against him under 8 U.S.C. § 1225(b). *Id.* ¶ 6. Mr. Tamay alleges that Expedited Removal proceedings are unlawful as applied

---

[1] In ruling on the motion as quickly as possible, the Court has done its level best, but the parties should appreciate "the temporal constraints under which the district court labored." *See Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 15 (1st Cir. 2004).
.

to him given that he has been present in the United States for more than two years. *Id.* ¶ 6. Mr. Tamay further alleges that he will be denied process in Immigration Court because Expedited Removal orders are issued by immigration enforcement officials rather than Immigration Judges and are not subject to appeal to the Board of Immigration Appeals (BIA) or eligible for review by the U.S. Court of Appeals. *Id.* ¶ 3, 7.

Mr. Tamay alleges that his detention violates the Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 15-20. He seeks, inter alia, a writ of habeas corpus preventing his transfer outside the District of Maine and ordering Rodney S. Scott, in his official capacity as Commissioner of Customs and Border Protection, Todd Lyons, in his official capacity as Acting Director of ICE, and Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security (collectively, the Respondents) to release him immediately. *Id.*

## II.   LEGAL STANDARD

The Court understands the Petitioner's motion to prohibit transfer and removal from the state of Maine to be requesting the Court to temporarily restrain the Respondents from taking such actions. The standard for issuing a temporary restraining order (TRO) is the same as for a preliminary injunction and is provided by traditional equity doctrines. *Aftermarket Auto Parts All., Inc. v. Bumper2Bumper, Inc.*, Civil No. 1:12-cv-00258-NT, 2012 U.S. Dist. LEXIS 143685, *3 (D. Me. Oct. 4, 2012); *accord* 11A WRIGHT, MILLER & KANE § 2942, at 37; *Alcom, LLC v. Temple*, No. 1:20-cv-00152-JAW, 2020 U.S. Dist. LEXIS 79863, at *15 (D. Me. May 6, 2020) (collecting cases).

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011); *accord Mass. Coal. of Citizens with Disabilities v. Civ. Def. Agency & Off. of Emergency Preparedness*, 649 F.2d 71, 76 n.7 (1st Cir. 1981) ("The authority of the District Court Judge to issue a preliminary injunction should be sparingly exercised")). "In order for a court to grant this type of relief, a plaintiff 'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest." *Peoples Fed. Sav. Bank*, 672 F.3d at 8-9 (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). "The party seeking the preliminary injunction bears the burden of demonstrating that these four factors weigh in its favor." *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006). "[T]rial courts have wide discretion in making judgments regarding the appropriateness of" preliminary injunctive relief. *Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2010).

### III.   DISCUSSION

#### A.   Likelihood of Success on the Merits

##### 1.   Jurisdiction

As an initial matter, the Court concludes that it retains jurisdiction over Mr. Tamay's habeas petition. "District courts are limited to granting habeas relief 'within their respective jurisdictions,'" *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)), and "with respect to habeas petitions 'designed to relieve an

3

individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" *Id.* (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)). Furthermore, "[u]nder habeas law, jurisdiction in a particular district is established when a petitioner is physically present in the district at the same moment a petition is filed there on his behalf." *Mahmoud Khalil v. Joyce*, No. 25-cv-01963 (MEF)(MAH), 2025 U.S. Dist. LEXIS 63573, at *7 (D.N.J. April 1, 2025); *accord Rumsfeld*, 542 U.S. at 435 (2004); *United States v. Hayman*, 342 U.S. 205, 213 (1952); *Ahrens v. Clark*, 335 U.S. 188, 190 (1948).

Here, when Mr. Tamay filed his habeas petition, he was in custody in the District of Maine. The Court accordingly concludes that it retains jurisdiction over this matter.

### 2. The Merits of Mr. Tamay's Habeas Petition

Within the United States Court of Appeals for the First Circuit, a likelihood of success on the merits is both the "sine qua non" and the "most important part of the preliminary injunction assessment"; the First Circuit has explained that "if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 7-10 (1st Cir. 2012) (quoting *Jean v. Mass. State Police*, 492 F.3d 24, 27 (1st Cir. 2008); *New Comm Wireless Servs. Inc. v. SPrintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002)). To carry his burden on this factor, a plaintiff "must establish a 'strong likelihood' that he will ultimately prevail." *Sindicato Puertorriqueño de Trabajadores*, 699 F.3d. at 10 (quoting *Respect Maine PAC v.*

*McKee*, 622 F.3d 13, 15 (1st Cir. 2010)). Mr. Tamay brings his habeas petition for violation of his Due Process rights under the Fifth Amendment to the federal Constitution; the Court thus considers Mr. Tamay's likelihood of success on these claims.

The Immigration and Nationality Act (INA) provides, inter alia, a statutory scheme for removal proceedings. *See* 8 U.S.C. §§ 1225, 1226. In broad terms, there are two pathways for removal of aliens. *Id*. Under 8 U.S.C. § 1226, individuals are served a Notice to Appear (NTA) and placed in removal proceedings in the Immigration Court where those individuals receive procedural protections furnished by applicable statues. 8 U.S.C. § 1226. Under this pathway, individuals without a criminal record or terrorism involvement are entitled to a bond hearing which may result in release for the pendency of the removal proceedings. *Id*. Further, the decision of the Immigration Court is subject to appellate review by the BIA and subsequent petition for review to U.S. Court of Appeals. In short, removal proceedings under 8 U.S.C. § 1226 provide a measure of due process. By contrast, under 8 U.S.C. § 1225(b), an Expedited Removal process permits immigration enforcement officials, rather than Immigration Judges, to issue removal decisions that are not subject to appeal to the BIA or U.S. Court of Appeals. Expedited Removal is limited to noncitizens who, inter alia, have not demonstrated "that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . .." U.S.C. § 1225(b)(1)(A)(iii)(II).

Based on the evidence in the record, the Court concludes that the Petitioner has evidenced a likelihood of success on his claim, as the Respondents have not produced evidence that Mr. Tamay has arrived in the United States within two years, subjecting him to Expedited Removal.

### B. Likelihood of Irreparable Harm

Mr. Tamay argues that it is important for the Court to preserve its jurisdiction over the pending habeas petition until the Court has the opportunity to evaluate his claims. *Pet.* (ECF No. 1). The Court concludes that Mr. Tamay has demonstrated likelihood of irreparable harm absent temporary injunctive relief. Absent a TRO, Mr. Tamay faces irreparable harm because an enforcement official could send him anywhere in the world as soon as tomorrow, without due process.

### C. The Balance of the Equities and the Public Interest[2]

Finally, upon consideration of the last two factors, the balance of the equities weighs in favor of granting the Petitioner's TRO, and a TRO would serve the public interest. To obtain preliminary injunctive relief, a petitioner must also show "the balance of equities tips in [its] favor." *Winter*, 555 U.S. at 20. This involves weighing "the balance of relevant hardships as between the parties." *Vaqueria Tres Monjitas, Inc. v. Fabre Laboy*, 587 F.3d 464, 482 (1st Cir. 2009). Furthermore, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S.

---

[2] The Supreme Court has instructed that the last two factors in the TRO analysis "merge when the Government is the party opposing the [TRO]"; the Court follows this instruction and reviews the balance of the equities and the public interest in tandem. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

at 24.  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

Here, as discussed above, the hardship to Mr. Tamay absent a TRO is obvious: if his removal does not comply with due process, he risks removal to an uncertain destination, on an uncertain timeline, through unspecified means.  The relative hardship to the Respondents, in contrast, is slight.  Furthermore, in cases implicating removal, "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm."  *Nken v. Holder*, 556 U.S. 418, 436 (2009); *accord D.V.D. v. United States Dep't of Homeland Sec.*, Civil Action No. 25-10676-BEM, 2025 U.S. Dist. LEXIS 74197, at *54 (D. Mass. April 18, 2025) (same).

There is a tension between the "public interest in prompt execution of removal orders," *Nken*, 556 U.S. at 436, the petitioner's allegation that he may be subject to an illegal and unconstitutional removal.  As the United States Supreme Court has written, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends."  *Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021); *see also NFIB v. Dep't of Labor*, 595 U.S. 109, 120-21 (2022) (staying an illegal vaccine mandate even though the Government said the mandate would save more than 6,500 lives); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952) (affirming district court's preliminary injunction of an illegal executive order even though a wartime president said his order was "necessary to avert a national catastrophe").

7

Further, "[t]he fact that [Plaintiff] has shown a likelihood of success on the merits strongly suggests that a TRO would serve the public interest." *New York v. Trump*, No. 25-cv-39, 2025 U.S. Dist. LEXIS 17593, at *17 (D.R.I. Jan. 31, 2025); *accord League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations") (internal quotation marks omitted). The Court does not assume that the Government would violate the legal or constitutional rights of the petitioner; however, for the moment and without having heard the Government's position, these final factors in the analysis lean in the Petitioner's favor.

## IV.   LIMITATIONS OF RELIEF

"[An] injunction should issue only where [it is] essential in order effectually to protect . . . rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)). Here, the "irremediable" injury would be deportation without due process, notice, and a meaningful opportunity to be heard.

Accordingly, the Court circumscribes its remedy, at this time, to prevent the U.S. Department of Homeland Security from removing Mr. Tamay from the District of Maine before the Court has had the opportunity to issue a ruling on his habeas petition. *See, e.g.*, *Lynch v. Dukakis*, 719 F.2d 504, 514 (1st Cir. 1983) ("The 'principles of equity jurisprudence' suggest that 'the scope of injunctive relief is dictated by the extent of the violation established . . . [and] the relief afforded [may not be] more burdensome than necessary to redress the complaining parties'") (citing

*Califano v. Yamasaki*, 442 U.S. 682, 702, (1979); *Milliken v. Bradley*, 433 U.S. 267, 280-81 (1977)).

## V. BOND REQUIREMENT

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). The First Circuit has explained "[t]he purpose of such a bond is to ensure that the enjoined party may readily be compensated for the costs incurred as a result of the injunction should it later be determined that it was wrongfully enjoined." *Axia NetMedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1, 11 (1st Cir. 2018); *accord Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring) ("The bond, in effect, is the moving party's warranty that the law will uphold the issuance of the injunction").

The First Circuit has previously indicated "there is ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond," *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991) (collecting cases), but the district courts in this circuit have generally required a bond to be posted. *See WEX Inc. v. HP Inc.*, No. 2:24-cv-00121-JAW, 2024 U.S. Dist. LEXIS 119715, at *99-100 (D. Me. July 9, 2024) (collecting cases). At the May 27, 2025 conference of counsel, the Government represented that, should the Court grant

9

the Petitioner's motion to prohibit Mr. Tamay's transfer or removal, it would seek the posting of bond authorized under Rule 65.

District courts are vested with "wide discretion" to set the amount of the bond. *Axia NetMedia*, 889 F.3d at 11; *accord Totem Forest Prods. v. T & D Timber Prods.*, No. 2:17-cv-00070-JDL, 2017 U.S. Dist. LEXIS 26062, at *5 (D. Me. Feb. 24, 2017) ("The Court has discretion to determine the amount of the security"). Typically, in determining the appropriate amount of bond, district courts consider "the potential incidental and consequential costs as well as [] the losses the unjustly enjoined or restrained party will suffer during the period the party is prohibited from engaging in certain activities." 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2954 (3d ed. 2013); *accord WEX Inc.*, 2024 U.S. Dist. LEXIS 119715, at *99-100. However, the First Circuit has recognized a trend in "suits to enforce important federal rights or 'public interests'" to not require posting of a substantial bond. *See Crowley v. Local No. 82, Furniture & Piano Moving*, 679 F.2d 978, 999-1000 (1st Cir. 1982) (collecting cases), *rev'd on other grounds*, 467 U.S. 526 (1984); *accord Sanchez*, 2010 U.S. Dist. LEXIS 9942, at *36-37 ("As recognized by the First Circuit in *Crowley v. Local No. 82, Furniture & Piano Moving*, there is a trend in 'public interest' litigation to only require nominal security or to completely dispense with the security requirement"). This trend extends to other federal courts. *See, e.g.*, *Alabama ex rel. Baxley v. Corps of Eng'rs of U.S. Army*, 411 F. Supp. 1261, 1275-76 (N. D. Ala. 1976) (collecting cases); *South Carolina v. United States*, 329 F. Supp. 3d 214, 238 n.35 (D.S.C. 2018) (same), *vacated on other grounds*,

10

912 F.3d 720 (4th Cir. 2019); *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, Civ. No. ABA-25-0333, 2025 U.S. Dist. LEXIS 31747, at *85 (D. Md. Feb. 21, 2025).

The *Crowley* Court provided a three-factor test to aid the district court's determination of whether to impose a substantial bond requirement: (1) "the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant"; (2) "the impact that a bond requirement would have on the enforcement of a federal right"; and (3) whether the likelihood of success on the merits of the claims at issue is "extraordinarily high." *Crowley*, 679 F.2d at 1000 & n.25; *accord Sanchez*, 2010 U.S. Dist. LEXIS 9942, at *37.

Applying these factors to the case at bar, the Court concludes that a nominal bond is appropriate. It is true that the temporary restraining order risks a harm to the Government by temporarily foreclosing its ability to deport Mr. Tamay. However, the ultimate costs associated with the Government's action are too complex to calculate in this expedited proceeding and imposition of a substantial bond would plainly have a significant effect on Mr. Tamay's assertion of his federal right to due process. Accordingly, the Court will require the Plaintiff to post a bond of $100 within 48 hours of the issuance of this Order pursuant to Federal Rule of Civil Procedure 65(c).

## VI.  CONCLUSION

The Court ORDERS that the Respondents in this matter are hereby ENJOINED from removing Luis German Lema Tamay from the District of Maine

11

pending further order of this Court.  The Court will schedule a further conference of counsel as soon as it becomes clear whether this order has been effective in its relief.

Finally, under Rule 65(b)(1)(A-B), a court may issue a TRO "only if," "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should be required."  The petition for writ of habeas corpus fails to comply with these two preconditions of the issuance of a TRO.  Therefore, this TRO will become effective only upon petitioner's full compliance with Rule 65(b)(1)(A-B).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of September, 2025